J-S19004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FREDERICK CAMPBELL | : | |
| | : | |
| Appellant | : | No. 1709 EDA 2016 |
| | : | |

Appeal from the Judgment of Sentence January 22, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002422-2012,
CP-51-CR-0002751-2012

BEFORE:   SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY SHOGAN, J.:                      **FILED JUNE 25, 2018**

Appellant, Frederick Campbell, appeals from the January 22, 2016 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following a jury trial.  We affirm.

The trial court summarized the facts of the crimes as follows:

> On November 16, 2011, at about 2:30 a.m., [T.T.] was studying in her bed while her 2-year-old slept in the same bed. When [T.T.] woke up[1] she saw Appellant standing in her bedroom.   [T.T.] asked Appellant how he entered into her apartment and Appellant stated: "you left the door open.  Why wasn't your door locked?"   Although they were romantically involved on one occasion, [T.T.] stated that she and Appellant were not involved at that time.  [T.T.] took her daughter and put her in the other bedroom.  Appellant then got in [T.T.]'s bed, took

---

[1]  T.T.'s testimony was that she ultimately "fell asleep on [her] schoolbooks." N.T., 9/2/15, at 64.

---

*   Retired Senior Judge assigned to the Superior Court.

his clothes off and started touching her legs. [T.T.] moved his hand and said, "I don't feel like that, I had a long day." Appellant then got on top of [T.T.] and started moving her legs over with his knees while [T.T.] kept closing her legs tight. Appellant put a rope around [T.T.'s] neck. [T.T.] placed her chin down, grabbed the rope and pulled it over the top of her head. [T.T.] attempted to get Appellant off of her by telling him that she had to use the restroom. [T.T.] also tried to get Appellant off of her by telling him to use a condom. At this time, Appellant took his penis out, put it in [T.T.'s] vagina and started "pumping." Appellant finished and followed [T.T.] to the bathroom and told her, "I'm sorry, I wouldn't hurt you." He then followed her back to the bedroom, grabbed her cell phone, tossed it on the bed and asked her if she was going to call the police. [T.T.] waited approximately 45 minutes until Appellant fell asleep in her bed. At this time, she took her daughter, went to her car and drove to the police station. [T.T.] then called the police outside their station and the police escorted her back to her apartment. The officers took Appellant out of [T.T.]'s apartment and had her identify him as the person who committed the sexual assault. [T.T.] then gave a statement and went for a sexual assault examination.

The second incident occurred on December 30, 2011. On that date, at roughly 2:30 a.m., [T.W.] came into contact with Appellant outside of the barbershop where he was employed. [T.W.] had a drug problem and had a history of performing oral sex on Appellant in exchange for drugs or money. On that night, Appellant waved [T.W.] over and they both went into the barbershop. Once inside, Appellant shut the door and locked the grates from the inside. [T.W.] asked for money but Appellant did not have any money. Appellant instructed [T.W.] to take her clothes off, but she told him not until he pays her first. [T.W.] then began to walk away but Appellant grabbed her by her throat and pushed her against the wall. [T.W.] broke free and ran towards the front door but Appellant caught up to her and grabbed her by her throat again. They then both fell backwards and [T.W.] began kicking the windows in an attempt to get someone's attention outside. [T.W.] broke the glass windows, grabbed a piece of glass and started to cut Appellant's hands because she could barely breathe. Appellant then dragged [T.W.] to the back of the store, punched her in the head and told her to suck his dick. Appellant threatened [T.W.] that if she did not comply, he would slit her throat with a straight razor. [T.W.] performed oral sex on Appellant, against her will. Appellant then told [T.W.] to turn

- 2 -

around and get on her knees on top of the barber chair. Appellant then inserted his penis into her vagina from behind. When Appellant was finished, he held his head and started crying. He said his life was over and that he was sorry. [T.W.] was still in fear of her life, so she helped him clean up the barbershop and then Appellant let her leave. [T.W.] ran straight home and knocked on the front door to her home until her husband answered. [T.W.'s] husband and her husband's friend went to the barbershop where they saw Appellant standing outside. [T.W.'s] husband and his friend chased Appellant but could not catch him. [T.W.'s] uncle called 911 and told them "I want to report a rape. [T.W.'s] husband also called 911 and stated that "he's running," referring to Appellant. Police then apprehended Appellant.

Trial Court Opinion, 4/17/17, at 3–5 (internal citations omitted).

Police arrested Appellant on December 30, 2011, and charged him with multiple offenses at Docket Number CP-51-CR-0002751-2012, relating to T.T., and at Docket Number CP-51-CR-0002422-2012, relating to T.W. On August 27, 2012, the Commonwealth filed a Motion to Consolidate Bills of Information, which the common pleas court granted on November 6, 2012, after a hearing. Following a three-day trial beginning on September 1, 2015, a jury found Appellant guilty on September 4, 2015, of aggravated assault, rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, aggravated indecent assault, and sexual assault[2] under Docket Number CP-51-CR-0002422-2012, and rape by forcible

---

[2] 18 Pa.C.S. §§ 2702(a), 3121(a)(1), 3123(a)(1), 3125(a)(1), 3124.1, respectively.

compulsion and sexual assault[3] under Docket Number CP-51-CR-0002751-2012.[4]  On January 22, 2016, the trial court sentenced Appellant to an aggregate sentence of imprisonment of twenty-seven and one-half to sixty-five years.  Appellant filed a post sentence motion on February 1, 2016, that was denied by operation of law on May 31, 2016.

Appellant filed a notice of appeal on June 1, 2016.  Pursuant to the trial court's order, Appellant filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on June 24, 2016, along with a motion for extension of time to file a supplemental statement upon receipt of the notes of testimony.  Despite the fact that the trial court never ruled on Appellant's motion, Appellant filed a supplemental statement of errors on September 29, 2016.

Appellant raises the following issues on appeal:

1. Did not the lower court err in granting the Commonwealth's motion to consolidate the two cases for trial where the facts of the cases did not demonstrate sufficient similarity to establish a common plan, scheme and design, and should not joinder have been denied where the probative value of the evidence introduced through consolidation of the cases was outweighed by the prejudice resulting from the consolidation?

2. Did not the lower court err in not permitting defense counsel to introduce into evidence, through questioning a

---

[3]  18 Pa.C.S. §§ 3121(a)(1) and 3124.1, respectively.

[4]  Under Docket Number CP-51-CR-0002751-2012 relating to T.T., the jury acquitted Appellant of aggravated assault.  Prior to trial, various other charges were *nol prossed* by the Commonwealth under both bills of information.

- 4 -

complainant or otherwise, evidence as to the nature of the specific charges for which the complainant had been convicted (involuntary manslaughter of the complainant's child and [endangering the welfare of a child ("EWOC")] where the complainant was currently charged again with EWOC, in that the nature of the complainant's prior convictions, in light of the new charges, demonstrated heightened reasons for the complainant to testify favorably for the Commonwealth, and in that the complainant's prior convictions also demonstrated a tendency to abrupt violence on the part of the complainant that would have supported a claim that the complainant was the initial aggressor and that the [Appellant] acted in self-defense?

3. Did not the lower court err in permitting the 911 radio tapes to be played to the jurors as they contained inadmissible hearsay (to wit, statements from nontestifying declarants that a complainant had been raped)?

4. Did not the lower court err in not permitting defense counsel to introduce into evidence, through questioning a police officer or otherwise, the fact that the [Appellant] made statements to the police (as opposed to introducing the content of those statements) as this evidence was relevant and not outweighed by the possibility of prejudice?

Appellant's Brief at 4–5.

Appellant first argues that the trial court erred in granting the Commonwealth's motion to consolidate the bills of information pursuant to Pa.R.Crim.P. 582(A)(1)(a), which states that the offenses charged in separate informations may be tried together if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion . . . ." Pa.R.Crim.P. 582(A)(1)(a). Appellant maintains the two cases failed to demonstrate a common plan, scheme, or design, and any probative value of

the evidence introduced through consolidation was outweighed by resulting prejudice. Appellant's Brief at 27. Appellant asserts that any similarities between the two cases were superficial, and he discounts the extent of the admitted similarities. *Id*. at 33, 35, 36.

We review a trial court's decision to consolidate offenses for trial under an abuse-of-discretion standard. *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997).

> Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.Pro. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.Pro. 583.
>
> Our Supreme Court has established a three part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine
>
>> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses. *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 497 (1988) (quoted in *Collins*, *supra* at 55, 703 A.2d at 422).

*Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005); *Commonwealth v. Johnson*, 179 A.3d 1105, 1115 (Pa. Super. 2018) ("While evidence of other criminal behavior is not admissible to show a

- 6 -

propensity to commit crimes, such evidence 'may be admitted for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident' as long as the 'probative value of the evidence outweighs its prejudicial effect.' Pa.R.E. 404(b)(2), (3)." Furthermore, "Appellant bears the burden of establishing such prejudice." **Commonwealth v. Ferguson**, 107 A.3d 206, 210 (Pa. Super. 2015) (citing **Commonwealth v. Melendez–Rodriguez**, 856 A.2d 1278, 1282 (Pa. Super. 2004) (*en banc*)).

The commission of the crimes need not be identical in order to be consolidated. **Compare Commonwealth v. Smith**, 47 A.3d 862, 869 (Pa. Super. 2012) (severance not required even though one crime occurred daylight and one at night, accused's pretexts for entering victims' houses was different, and assaults began differently), with **Commonwealth v. Brown**, 505 A.2d 295 (Pa. 1986) (error to deny severance of cases four months apart where only similarity was theft of television sets during daylight hours from ransacked houses).

Our review of the record supports the trial court's conclusion that consolidation of Appellant's two criminal informations was proper. We rely on the trial court's explanation regarding the similarities upon which it relied:

> Here, the similarities between the two assaults are extensive. The events occurred only about 45 days apart. Appellant knew both individuals before the assaults. Appellant ejaculated inside both victims' vaginas. Appellant then apologized after each assault. Both women targeted were from his neighborhood. Both were African American females. Both

- 7 -

previously engaged in sexual relations with Appellant. Both victims were assaulted at the same time of night, around 2:30 a.m. Appellant had been drinking before both assaults. Both victims suffered from Appellant's attempts to strangle or choke them. Appellant did not use a condom for either assault. [*Commonwealth v.] Smith*[, 47 A.3d 862 (Pa. Super. 2012),] and [*Commonwealth v.*] *Newman*[, 598 A.2d 275 (Pa. 1991),] control this matter, supporting consolidation of both indictments before Appellant.

Trial Court Opinion, 4/17/17, at 15–16 (internal citations omitted). In addition, both women knew Appellant by his nickname, Turtle. N.T., 9/2/15, at 62, 174. Both victims previously had received money from Appellant. *Id*. at 120, 175. Both victims weighed about 130 pounds. *Id*. at 78–79, 186. The extent of the similarities comports with relevant case law. *See*, *e.g.*, *Commonwealth v. Keaton*, 729 A.2d 529, 537–538 (Pa. 1999) (similarities among cases such as that offenses were committed over six-month period, all three victims lived in the defendant's neighborhood, all three victims were African American, and each offense involved strangulation compelled that consolidation for trial was proper); *Commonwealth v. Larkins*, 449 A.2d 42 (Pa. Super. 1982) (consolidation proper where all the crimes occurred within a three-mile area, all occurred during early morning hours, victims were attacked from behind by an assailant who was African American and who wore leather gloves, and the methods of assault were similar). The record supports the trial court's conclusion that there were sufficient similarities between the crimes to support consolidation of the informations.

Moreover, Appellant fails to establish that the jury was incapable of separating the crimes to avoid confusion. Our Supreme Court has held that "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." **Collins**, 703 A.2d at 423. Here, the situations surrounding each rape were easily separated by the jury, where the attack on T.T. occurred in her bedroom after Appellant broke into her apartment, and the attack on T.W. occurred in the barbershop where Appellant worked. N.T., 9/2/15, at 64, 175–176. The rapes occurred on different dates, in different locations, and involved different victims. Thus, while significantly similar, the evidence relating to each crime was distinct enough to allow the jury to separate the facts and apply them to each individual assault in assessing Appellant's culpability. **Commonwealth v. Burton**, 770 A.2d 771, 779 (Pa. Super. 2001). There was no risk of confusing the jury.[5]

Finally, the trial court found that consolidation did not prejudice Appellant. The type of prejudice at issue is "that which would occur if the evidence tended to convict a defendant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence." **Commonwealth v. Lark**, 543 A.2d 491, 496, 499 (Pa. 1988). Here, the evidence did not merely show Appellant's propensity to commit crimes; it also

---

[5] The record reveals that the trial court also provided the jurors with notebooks to take notes and record details. N.T., 9/2/15, at 12.

demonstrated a common plan that Appellant employed to commit each sexual assault. As discussed above, each sexual assault involved distinct facts that permitted the jury to examine each crime individually. Consequently, we conclude that the trial court did not abuse its discretion in consolidating the bills of information in this case.

Appellant's second issue avers error by the trial court in refusing to allow defense counsel to cross-examine T.W. "or otherwise present[] evidence, as to the exact nature of the charges for which [T.W.] was then on parole and the charges which [T.W.] then currently faced in an open case." Appellant's Brief at 40. This issue concerns T.W.'s 2001 convictions for involuntary manslaughter and EWOC as well as a pending charge of EWOC. On September 1, 2015, the day before the jury was sworn, the Commonwealth asserted on the record that it wished to address two motions *in limine*. N.T., 9/1/15, at 3. We note that there are no written motions *in limine* in the certified record. The Commonwealth explained that T.W. currently was on parole for involuntary manslaughter and EWOC relating to a deceased child. *Id*. at 5. T.W. also had an open case pending for EWOC relating to another child. *Id*. At that time, with the Commonwealth's concession, the trial court ruled that Appellant could introduce evidence that T.W. had a prior felony conviction, she was on parole at the time of trial, and she had an open charge pending against her. *Id*. at 5–8. It deferred a decision concerning whether the defense could admit evidence that the open charge was for EWOC and whether

it could inquire about the nature of the prior convictions. *Id*. at 9–12. The court ultimately ruled that the defense could not name the crimes nor inquire about the details. N.T., 9/2/15, at 3–10. Appellant asserts that the omission of this evidence was error and suggests the nature of the charges against T.W. indicated a "heightened reason for bias" by her. *Id.* at 41. Appellant also maintains that the charges suggest that T.W. was the initial aggressor in the present case, "which would have supported [Appellant's] self-defense claim as to physical assault charges involving [T.W.]" *Id.* at 41, 43.

Questions concerning the admission of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Baumhammers*, 960 A.2d 59 (Pa. 2008). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007). "It is not sufficient to persuade the appellate court that it might have reached a different conclusion; it is necessary to show an actual abuse of the discretionary power." *Commonwealth v. Bryant*, 67 A.3d 716, 726 (Pa. 2013). "Evidence may be excluded 'if its probative value is outweighed by ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'"

*Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) (citing Pa.R.E. 401, 402).

We reject Appellant's assertion of error. The jury received ample evidence to support a bias theory. T.W. testified she was on parole for a felony at the time she was raped. N.T., 9/2/15, at 237. She admitted all of the following: having served time in prison; she currently was on parole; she had an open criminal charge for the same crime of which she had been previously convicted; and admitted to prostitution and drug use, which she acknowledged were probation violations. *Id.* at 198–199, 237–241.

In addition, like the trial court, we reject Appellant's alternate reason, that admission of the details of the involuntary manslaughter conviction and open EWOC charge would have suggested to the jury that T.W. was the initial aggressor and would have supported a self-defense claim by Appellant regarding the physical assault on T.W. Trial Court Opinion, 4/17/17, at 10; Appellant's Brief at 8. Before self-defense is properly in issue, there must be some evidence to justify the finding. *Commonwealth v. Mouzon*, 53 A.2d 738, 741 (Pa. 2012). Here, there was no evidence from any source that the six-feet, four-inch Appellant, who locked the smaller, 130-pound victim in the barbershop at 2:30 a.m., choked her, and threatened her with a straight razor, acted in self-defense, either before or after he raped her vaginally and anally.

Moreover, the facts establish that T.W.'s involuntary manslaughter conviction resulted from T.W. hitting her child's head against the ground

because he was crying. She put the child to bed, later found him unresponsive, and the child ultimately died. N.T., 9/1/15, at 7. The trial court determined that the facts of that crime "couldn't be more dissimilar" from the altercation in the barbershop and did not demonstrate that T.W. was, in fact, the initial aggressor with Appellant to support a self-defense claim. N.T., 9/2/15, at 4–5; N.T., 9/3/15, at 124–125. As horrific as the facts of the prior crime were, we agree with the trial court. *See Christine*, 125 A.3d at 399 (no abuse of discretion to exclude victim's conviction of simple assault for grabbing, pushing, and threatening his girlfriend because it was too dissimilar from accused's assertion that victim threw hot coffee in his face and punched him several times). The trial court herein underscored that the two crimes were eleven years apart with clearly dissimilar facts. Trial Court Opinion, 4/17/17, at 10. We conclude this issue lacks merit.

In his third issue, Appellant avers that the trial court erred in permitting the 911 telephone calls initiated by T.W.'s husband and uncle to be played for the jury because "they contained inadmissible hearsay." Appellant's Brief at 46. We note this one-and-one-half page argument by Appellant is conclusory, fails to develop the issue, importantly fails to include citation to the record where such tapes were played, and fails to support the issue with citation to relevant case law. For these reasons, the issue is waived. *Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (claims failing to advance developed argument or citation to supporting authorities and record are waived).

- 13 -

Further, we note that in his brief, Appellant contends that the source of the information that T.W. was raped in the 911 calls "is unknown." Appellant's Brief at 46. Appellant did not assert that claim at trial nor in his Pa.R.A.P. 1925(b) statement, where he merely averred that the 911 calls were hearsay and no exception applied. N.T., 9/1/15, at 183–190; Pa.R.A.P. 1925(b) Statement, 6/24/16; Supplemental Pa.R.A.P. 1925(b) Statement, 9/29/16. For this additional reason, the claim is waived. **Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (Appellant's Pa.R.A.P. 1925(b) statement was too vague to allow the court to identify the issues raised); **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (As a general rule, any issues not raised in a Rule 1925(b) statement will be deemed waived).

Finally, even if the issue was not waived, we would rely on the trial court's explanation. Trial Court Opinion, 4/17/17, 5–8. Thus, we reject this claim.

Appellant's final issue is that the trial court abused its discretion when it precluded him from eliciting testimony from detectives that Appellant had given a statement in each case. Appellant's Brief at 48. Appellant maintains that the evidence was relevant, but once again, he fails to cite any cases or law in support. **Id**. Appellant contends that if evidence is admissible, "it is not within the purview of the court to decide what evidence" Appellant may present. **Id**. at 49. He suggests that "[w]ithout the content of the statements

being divulged, there appeared to be little prejudice outweighing" their admission. *Id*. at 48.

In addition to failing to cite case law in support of his argument, Appellant fails to cite to the place in the record where the court refused such evidence. In *Commonwealth v. Harris,* 979 A.2d 387 (Pa. Super. 2009), we stated:

> When an allegation is unsupported [by] any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal. Pa.R.A.P. 2119(c) (requiring that if reference is made to the record, it must be accompanied by a citation to the record); *Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa.Super.2006) ("An appellate brief must provide citations to the record and to any relevant supporting authority. This Court will not become the counsel for an appellant, 'and will not, therefore, consider issues ... which are not fully developed in the brief.'"). *See also Commonwealth v. Tielsch*, 934 A.2d 81, 93 (Pa. Super.2007); *Commonwealth v. Judd*, 897 A.2d 1224, 1233 (Pa. Super.2006).

*Id*. at 393. *See also Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) ("The Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. *See* Pa.R.A.P. 2119. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim."). This issue is waived.

Even if not waived, we would conclude the claim lacks merit. In disallowing the evidence, the trial court recognized that admitting evidence that Appellant spoke to police could potentially be harmful because first, it

would not inform the jury what he actually said in his statements, second, it would invite jurors to speculate regarding what Appellant had said, and third, it would invite jurors to question why Appellant was not testifying. N.T. 9/1/15, at 15–17; Trial Court Opinion, 4/17/17, at 12. We cannot say the trial court abused its discretion, and we would find the issue without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/18